1

2

3

4                               UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7   UNITED STATES OF AMERICA, et al.,          Case No.  13-cv-01497-JST   (TSH)

8                    Plaintiffs,

9          v.                                  **ORDER RE: MOTION FOR
                                               SANCTIONS**
10  CAROLINA LIQUID CHEMISTRIES,               Re: Dkt. No. 137
    CORP., et al.,
11
                     Defendants.
12

13          Defendant Carolina Liquid Chemistries Corporation ("CLC") moves the Court for an order

14  imposing sanctions on Relator Randy Reagan.  The Court finds the matter suitable for decision on

15  the papers and vacates the December 16, 2021 hearing.  *See* Civil Local Rule 7-1(b).  The Court

16  grants the motion in part and denies it in part for the reasons explained below.

17  **A.      Background**

18          The parties stipulated to a protective order in this action.  ECF No. 78.  It states in relevant

19  part that "Disclosure and discovery activity in this action are likely to involve production of

20  confidential, proprietary, or private information for which special protection from public

21  disclosure and from use for any purpose other than prosecuting this litigation may be warranted."

22  *Id*. § 1.  Section 7.1 states what purposes a party may use protected material for:  "A Receiving

23  Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party

24  in connection with this case only for prosecuting, defending, or attempting to settle this litigation."

25  Section 7.2  identifies the categories of people that confidential information may be disclosed to.

26  Section 3 provides that "[t]he protections conferred by this Stipulation and Order cover not only

27  Protected Material (as defined above), but also (1) any information copied or extracted from

28  Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and

*United States District Court*
*Northern District of California*

1   (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal

2   Protected Material."

3        Section 10 provides that "[i]f a Receiving Party learns that, by inadvertence or otherwise, it

4   has disclosed Protected Material to any person or in any circumstance not authorized under this

5   Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the

6   Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all

7   unauthorized copies of the Protected Material, (c) inform the person or persons to whom

8   unauthorized disclosures were made of all the terms of this Order, and (d) request such person or

9   persons to execute the 'Acknowledgment and Agreement to Be Bound' that is attached hereto as

10   Exhibit A."

11        In advance of the parties' November 12, 2020 settlement conference with Magistrate Judge

12   Beeler, on September 30, 2020, CLC produced to relators its historical and current financial

13   information bearing upon the company's ability to pay in the event the parties reached a

14   settlement.  This information was marked "CONFIDENTIAL."  ECF No. 137-1.  In October 2020,

15   Eric Buescher, a former partner at Cotchett, Pitre & McCarthy, verbally provided relators a high-

16   level summary of those financials.  ECF No. 143 at 5 of 12.

17        On November 2, 2020, relator Reagan sent an email to John Domalavage, a former CLC

18   employee, in which he shared a summary of CLC's financial information.  The email stated in

19   part:  "I have been asked by the Government to help look into the true gross profit of CLC from

20   2009-2014.  CLC has claimed that they only made $18.5 million gross profit per year during that

21   time frame.  That their costs of goods were $8 million and operations costs were approx. $8.5

22   million per year.  They state they only made a net profit of $520,000.00 profit per year during that

23   time frame.  [¶]  I allege that CLC made much more than $18.5 million per year gross sales and

24   that their operating cost were in the neighborhood of $4 to $5 million and their costs of good was

25   in the range [of] $4 to $5 million not the $8 million plus that they are claiming.  [¶]  The

26   government also doesn't believe them either."  ECF No. 137-3

27        On July 9, 2021 relators made a document production that included Reagan's November 2,

28   2020 email.  ECF No. 143-1 ¶ 4.  A series of correspondence ensued, in which CLC accused

United States District Court
Northern District of California

Reagan of having violated the protective order.  On September 7, 2021 CLC took Domalavage's deposition.  ECF No. 137-8.  On October 8, 2021, the parties filed a joint letter brief raising CLC's request for sanctions for the alleged protective order violation.  On November 2, 2021, the Court ordered CLC to re-submit its request for sanctions as a noticed motion under Civil Local Rule 7, ECF No. 136, which it has now done.  ECF No. 137.

## B.      Legal Standard

"Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order . . . ." *Life Techs. Corp. v. Biosearch Techs., Inc.*, 2012 WL 1600393, *8 (N.D. Cal. May 7, 2012). "Sanctions are permissible under Rule 37 when a party fails to comply with a court order, regardless of the reasons." *Id.*; *see also Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ("For purpose of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey' simply by failing to comply with an order. . . . [T]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply.").  "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (citation omitted).

Rule 37 "authorizes a district court to impose a wide range of sanctions if a party fails to comply with a discovery order."  *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).  "The district court's authority to issue the sanctions is subject to certain limitations: (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." *Id.*  Rule 37 provides also that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

## C.      Whether Reagan Violated the Protective Order

Reagan does not dispute that he provided Domalavage CLC's confidential information. Rather, he offers two reasons why doing so did not violate the protective order.

United States District Court
Northern District of California

1    First, he states that he sought Domalavage's advice "in a good faith attempt to settle the

2    litigation," which he says is authorized by section 7.1 of the protective order.  ECF No. 143.

3    Second, he says that Domalavage is one of the people authorized to be disclosed this confidential

4    material under section 7.2(g) of the protective order.

5    It looks like Reagan has to succeed on both arguments to avoid the conclusion that he

6    violated the protective order.  After all, section 7.1 states in relevant part:  "A Receiving Party may

7    use Protected Material that is disclosed or produced by another Party or by a Non-Party in

8    connection with this case only for prosecuting, defending, or attempting to settle this litigation.

9    *Such Protected Material may be disclosed only to the categories of persons and under the*

10   *conditions described in this Order*."  ECF No. 78 (emphasis added).  Thus, even if Reagan had an

11   acceptable purpose in disclosing the information (to prosecute, defend or attempt to settle this

12   case), he also needed to disclose it to an acceptable person.

13   CLC doesn't contest Reagan's claimed purpose for disclosing the information, and the

14   Court has no reason to doubt it.  His email was 10 days before the settlement conference, and he

15   was plainly asking for Domalavage's help in estimating CLC's ability to pay, which can be a

16   relevant issue in a settlement negotiation.  So, the Court will assume that Reagan acted with one of

17   the proper purposes in section 7.1 and will now turn to whether Domalavage was entitled to access

18   under section 7.2(g).

19   That section provides that "a Receiving Party may disclose any information or item

20   designated 'CONFIDENTIAL'" to "the author or recipient of a document containing the

21   information or a custodian *or other person who otherwise possessed or knew the information*."

22   (emphasis added).  Domalavage's deposition testimony is quite clear that during his 2010-2012

23   tenure at CLC, he never had access to company-wide financial information of the type contained

24   in Reagan's November 2, 2020 email.  ECF No. 137-8 at 8:25-9:4, 14:24-15:5, 16:7-25, 30:12-15,

25   31:15-22, 38:2-5.  CLC's counsel specifically walked Domalavage through the items listed in that

26   email, and he denied knowing any of that information.  *Id*. at 35:22-36:16.  Domalavage also

27   testified that *before* Reagan sent him the November 2, 2020 email, he had told Reagan he didn't

28   have CLC's financial information.  *Id*. at 38:16-20 ("Q.  So even before the November 2, 2020

4

United States District Court
Northern District of California

1   email from Mr. Reagan, you had shared with him that you didn't have financial information of

2   Carolina Liquid Chemistries?  A.  Correct. Correct.").  Reagan points out that Domalavage

3   testified that he did have access to revenue and expense information concerning service contracts,

4   *id*. at 10:23-11:21.  However, that is not the subject matter of the November 2 email.

5       Based on Domalavage's deposition testimony, the Court concludes he was not entitled to

6   receive this confidential information under section 7.2(g) of the protective order.  Reagan's back

7   up argument is that he "reasonably believed" that Domalavage would have possessed that

8   information.  As a factual matter, the Court observes that this assertion is not supported by a

9   declaration or by testimony, whereas Domalavage's testimony under oath is that he had previously

10  told Reagan he did not have such information.  As a legal matter, Reagan's claimed belief was

11  objectively unreasonable.  A receiving party under the protective order needs some solid basis to

12  think that a person is "the author or recipient of a document containing the information or a

13  custodian or other person who otherwise possessed or knew the information."  The author and

14  recipient are often evident from the document itself or its metadata.  It can be harder to figure out

15  if someone is "a custodian or other person who otherwise possessed or knew the information," but

16  if the receiving party is not sure, it can ask the person *before* making the disclosure.  Here, Reagan

17  claims that he formed a unilateral belief that Domalavage would have had access to this type of

18  financial information during his time at CLC, but he did not take any steps to determine if that was

19  true.  Domalavage's testimony makes clear that all Reagan needed to do was ask.

20      The Court therefore concludes that Reagan violated section 7.2 of the protective order

21  when he sent his November 2, 2020 email to Domalavage.

22      The Court also concludes that Reagan violated section 10 of the protective order.  It states:

23  "If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material

24  to any person or in any circumstance not authorized under this Stipulated Protective Order, the

25  Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

26  disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c)

27  inform the person or persons to whom unauthorized disclosures were made of all the terms of this

28  Order, and (d) request such person or persons to execute the 'Acknowledgment and Agreement to

Be Bound' that is attached hereto as Exhibit A."

The Court does not believe that a receiving party "learns" that it disclosed protected material to a person not authorized to receive it only when opposing counsel tracks down that person, subpoenas him, and obtains sworn testimony conclusively showing he was not entitled to receive the information.  Such a standard would encourage recklessness and largely gut section 10 of value by allowing a receiving party to sweep improper disclosures under the rug as long as it could dream up an argument that maybe, possibly the person might have possessed or known that information anyway.  It would allow Reagan to share CLC's confidential information with any high-ranking former employee because – hey, who knows? – maybe they saw it too.  Instead, a receiving party "learns" it made an improper disclosure when it knows it made a disclosure to a person, and the receiving party did not make an objectively reasonable effort to determine if that person was authorized to receive that information (or, of course, if the receiving party knows the person was not authorized to receive it).  Here, Reagan's claimed belief that Domalavage would have had access to this type of confidential information is legally unreasonable because Reagan did not take appropriate steps to determine if that was the case, such as by asking Domalavage if that was true.  And factually, Reagan's claimed belief fails in light of Domalavage's uncontradicted testimony that he had previously told Reagan he did not have that information while at CLC

Accordingly, Reagan was obligated to "immediately" notify CLC of the unauthorized disclosure, use his best efforts to retrieve the unauthorized copies, inform Domalavage that the disclosure was unauthorized, and request that Domalavage execute the agreement to be bound by the protective order.  Instead, he did none of those things, and CLC did not discover the improper disclosure until eight months later when they received a document production from relators.

### D.    Remedies

CLC requests two remedies:  (1) attorneys' fees and costs incurred in investigating and litigating the protective order violation, and (2) an order restricting the scope of discovery.

#### 1.    Attorneys' Fees and Costs

Rule 37(b)(2)(C) states that when a party has violated a court order, "the court must order

the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

Here, CLC seeks $12,026.30 in fees and costs. ECF No. 144-1. CLC has submitted the time entries for the requested attorneys' fees. These entries all relate to investigating and litigating this protective order violation. The only cost CLC seeks is $416.30 for the Domalavage deposition, also plainly related to the protective order violation. The fees and costs are reasonable. The 38.70 hours of attorney time are warranted given the meet and confer correspondence, the need to take a deposition, and the need to file the present motion. Significantly, nearly all of the work was done by one attorney, demonstrating efficiency. Further, the attorneys' hourly rate of $300 is modest for North Carolina given counsel's experience, ECF No. 144-1 ¶ 11, and well below market for this district. *See Proofpoint, Inc. v. Vade Secure, Incorporated*, 2020 WL 7398791, *3 (N.D. Cal. Dec. 17, 2020) (approving "hourly rates rang[ing] from approximately $590 per hour to approximately $675 per hour for associates, and from approximately $880 per hour to approximately $915 per hour for more senior attorneys. The court finds that these rates are reasonable for the type of work involved in this case. Specifically, these hourly rates are well within (if not below) the range of prevailing rates in this district for attorneys of comparable skill, experience, and reputation.") (citing cases). Accordingly, the Court finds that these expenses were caused by the protective order violation and that they are reasonable.[1] Further, the violation of the protective order was not substantially justified and other circumstances do not make an award of expenses unjust.

CLC's motion gave notice that it was seeking an award of fees and costs against Reagan only. ECF No. 137, page 4 of 13. CLC did not give notice that it was seeking fees and costs from Reagan's counsel, so counsel did not know they needed to brief that. Accordingly, the Court will not consider awarding fees against Reagan's counsel, as that relief was not specifically requested

---

[1] Underscoring the reasonableness of CLC's requested fees and costs is Reagan's claim that his counsel have incurred $37,445.00 in connection with the same dispute. ECF No. 143 at page 11 of 12.

1   in the motion.

2       For the foregoing reasons, the Court awards CLC $12,026.30 in fees and costs against

3   Relator Randy Reagan.

4       **2.      Scope of Discovery**

5       The second relief CLC seeks is an order "restricting ongoing discovery to the relevant time

6   period as alleged in the pleadings, from March 9, 2009, to February 2014, to protect CLC's

7   confidential and proprietary information not related to the lawsuit."

8       The Court is confused by this request.  There is no causal relationship between Reagan's

9   protective order violation and this requested remedy.  CLC's assertion that the "relevant" time

10  frame is 2009-14 and that information from later than that is "not related to the lawsuit" is a

11  discovery argument, not a sanctions argument.  Reagan's violation of the protective order does not

12  affect what information is relevant or not relevant to this case; those are unrelated issues.

13  Therefore, this requested remedy is denied.

14      At the risk of stating the obvious, if there is a discovery dispute between the parties

15  concerning the proper time frame for discovery, the parties should file a joint discovery letter

16  brief, and the Court will be happy to rule on that issue.

17  **E.   Conclusion**

18      CLC's motion for sanctions is granted in part and denied in part as stated above.

19      **IT IS SO ORDERED.**

20

21  Dated: December 14, 2021

22

23  THOMAS S. HIXSON
    United States Magistrate Judge

24

25

26

27

28

United States District Court
Northern District of California