RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street. 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:  (628) 232-3101

WALTER C. HOLTON, JR. (*Pro Hac Vice*)
wholton@walterholton.com
CHERYL D. ANDREWS (*Pro Hac Vice*)
candrews@walterholton.com
HOLTON LAW FIRM, PLLC
857 W. Fifth Street
Winston-Salem, NC 27101
Telephone:  (336) 777-3480
Facsimile:  (336) 722-3478

*Attorneys for sole remaining Defendant,*
*Carolina Liquid Chemistries Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITES STATES OF AMERICA *ex rel.* RANDY REAGAN and JAMES LONGFIELD; and STATE OF CALIFORNIA, STATE OF TEXAS, STATE OF MICHIGAN, STATE OF NEW YORK, STATE OF NORTH CAROLINA *ex rel*. RANDY REAGAN and JAMES LONGFIELD<br><br>*Plaintiffs,*<br>v.<br><br>CAROLINA LIQUID CHEMISTRIES CORP., a Delaware Corporation;<br><br>*Defendant.* | Case No. 4:13-CV-01497-JST<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       August 11, 2022<br>Time:       2:00 p.m.<br>Judge:      Hon. Jon S. Tigar<br>Courtroom:  (Teleconference) |

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that the following motion will be heard on August 11, 2022, at 2:00 pm before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, via teleconference.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Carolina Liquid Chemistries Corporation ("Carolina Liquid") moves this Court for an order entering summary judgment against Plaintiff-Relators Randy Reagan and James Longfield ("Relators") on the third amended complaint ("TAC"). Carolina Liquid moves on the ground that Relators have failed to establish a genuine issue of material fact through discovery and Relators' claims fail as a matter of law.

Carolina Liquid bases this motion on this Notice of Motion, the Memorandum of Points and Authorities below, all pleadings, records, and papers on file in this action, and such other and further oral argument or documentary evidence as may be presented at or before the hearing.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether Defendant is entitled to summary judgment on all claims.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND .............................................................................................................. 1

III.  FACTS .............................................................................................................................. 2

IV.  ARGUMENT ................................................................................................................... 7

    A.  Relators have failed to produce evidence of a false claim. ............................................ 8

    B.  Relators have failed to produce evidence of fraudulent conduct causing submission of a false claim. ......................................................................................... 10

    C.  Relators have failed to produce evidence of scienter. .................................................. 13

V.   CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v, Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ............................................................................................................. 7

*United States v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002) ................................................................................................ 8

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ................................................................................................ 8

*Olsen v. Idaho State Bd. Of Med.*,
   363 F.3d 916 (9th Cir. 2004) ................................................................................................ 7

*Surrell v. Cal. Water Serv. Co.*,
   518 F.3d 1097 (9th Cir. 2008) ......................................................................................... 7, 14

**Statutes**

31 U.S.C. § 3729 ..................................................................................................................... 10

31 U.S.C. § 3729(b)(1) ............................................................................................................ 13

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................... 2

Fed. R. Civ. P. 56(a) .................................................................................................................. 7

Fed. R. Civ. P. 56(c) .................................................................................................................. 7

**Other Authorities**

False Claims Act ............................................................................................................ 1, 10, 13

## I. INTRODUCTION

Carolina Liquid moves the Court to enter summary judgment on all claims in the TAC. The undisputed facts establish that Carolina Liquid did not cause the submission of a single false claim to the government by any healthcare provider. The CPT coding experts for both parties agree that all of the alleged reimbursements reviewed by Relators' billing expert for urine drug test results, as set forth on Relator's spreadsheet Exhibit 4, pp. 9-10, <u>are payments for qualitative or presumptive test codes</u>. Further, the parties agree that qualitative or presumptive test codes are correctly applied to chemistry analyzer use for urine drug testing ("UDT"). No genuine issue of material fact exists regarding this dispositive issue.

With respect to Relator's alleged quantitative code results as contained in Exhibit 4, pp. 8-9, the facts are undisputed that the explanation of benefit (EOB") payments reviewed by Relators' coding expert contain no identifying information connecting any of the reimbursements to a Carolina Liquid chemistry analyzer, or for that matter to an analyzer result at all, rather than a mass spectrometer result. <u>The data does not specify the testing equipment used nor the provider who performed the test.</u> To assume that any particular EOB payment may be false or incorrect is sheer speculation. No genuine issue of material fact exists regarding this issue either.

Further, in the TAC, Relators rely upon allegations set forth in the 2014 FBI affidavit, for which they claim to be the original source. Relators have failed to substantiate those allegations through fact witnesses as more fully set forth herein.

In sum, Relators fail to raise genuine issues of material facts as to all elements of a False Claims Act ("FCA") claim. The allegations of the TAC do not withstand summary judgment.

## II. BACKGROUND

On April 13, 2013, Plaintiff-relators Randy Reagan and James Longfield filed this FCA complaint under seal alleging that from 2009 to 2013 Defendant Carolina Liquid systematically marketed its UDT chemistry analyzers as capable of performing high-complexity "quantitative" testing, causing physicians and pain management clinics to submit false "quantitative" claims to Medicare and Medicaid resulting in millions of dollars in overpayments. ECF No, 1, ¶¶ 1-2. On May 23, 2013, Relators filed the same allegations in an almost identical complaint against a

- 1 -

Defendant's Motion for Summary Judgment
CASE NO.: 4:13-CV-01497-JST

1  different company, Medtest DX, Inc. in the Northern District of California, 13 CV 2345. Ex. 11.

2  On October 18, 2018, Relators filed their first amended complaint ("FAC"). ECF No. 25.
3  On October 23, 2018, the United States declined to intervene and the case was unsealed. ECF No.
4  27. The Court granted Defendants' motion to dismiss the FAC on March 19, 2019, holding that
5  Relators had failed to adequately allege Defendants' fraudulent conduct with the particularity
6  required by Federal Rule of Civil Procedure 9(b). ECF No. 62 at 14-15. On August 6, 2019,
7  Relators filed their second amended complaint ("SAC"). ECF No. 63. On December 16, 2019, the
8  Court dismissed the SAC holding that Relators were barred by the FCA's public disclosure bar and
9  that the claims against the Shugarts were barred by the statute-of-limitations. ECF No. 81 at 4, 7.

10  On January 17, 2020, Relators filed their TAC supplementing the allegations of the prior
11  complaints and alleging the relevant time period as, "The billing scheme described herein was
12  Carolina Liquid's business model from at least 2009 through at least 2014." ECF. No. 83, ¶ 87.
13  On August 20, 2020, the Court granted in part Carolina Liquid's motion to dismiss the TAC as to
14  the Shugarts and denied the motion as to Carolina Liquid. ECF No. 100 at 13.

15  **III.   FACTS**

16  Phil Shugart founded Carolina Liquid in 1996. Ex. 12 ("Phil Shugart Depo.") p.46:3. Prior
17  to that, Mr. Shugart served three years in the Army, including service in Vietnam until
18  approximately 1972, and undertook an extensive career in the medical device industry. *Id.* at 30:21-
19  31:1-7. Carolina Liquid sells chemistry analyzers and reagents for use in clinical laboratories. *Id.*
20  58:16-20.

21  Relators allege in the TAC, and Carolina Liquid admits, that to bill Medicare, healthcare
22  providers must submit a CMS-1500 claim form (the "form") certifying that the treatment was
23  "medically indicated and necessary for the health of the patient." ECF No. 83, ¶ 28; ECF No. 123,
24  ¶ 28. The form requires the provider to state the procedure for which it is billing Medicare, the
25  provider number, the identity of the patient, and a short narrative explaining the diagnosis and the
26  medical necessity of services that the provider rendered. *Id.* at ¶ 29.

27  Further, all healthcare providers must comply with all statutes, regulation, and guidelines
28  to be reimbursed by Medicare. Providers have a duty to have knowledge of the relevant statutes,

regulations, and guidelines regarding coverage for Medicare's services. *Id.* at ¶ 30. The form requires the provider to certify that the information on the form is accurate and complete; that the provider is familiar with all applicable laws, regulation, and instructions; that the provider will supply sufficient information to allow the government to make an informed payment decision; that the claim complies with all applicable Medicare or Medicaid regulations and laws; and that all services performed were medically necessary. Ex. 1.

While Relators allege in the TAC a relevant time period of 2009 to 2014, they have identified no allegedly problematic Carolina Liquid marketing materials other than the 2012 and 2013 brochures attached to the complaint. In those brochures, consistent with the above requirements, Carolina Liquid included the following specific disclaimers:

- Note: It is the responsibility of each laboratory to check with their local carriers to confirm the accuracy of the codes used. (ECF No. 83, pgs. 87, 132)

- Revenue projections are benchmarked using Medicare payout. Profit picture may change depending on your insurance mix. Profit is subject to change depending on local providers. Check with your providers for payouts in your area. Reimbursement is dependent upon ordering with proper ICD-9 Diagnosis Codes. Note: This is a general analysis. A more complete analysis can be provided that is specific to your practice. (ECF No. 83, pgs. 77, 79, 125, 126)

- Disclaimer: The information provided on this website is current as of February 2005 and was obtained from third-party sources and is subject to change without notice as a result of changes in reimbursement laws, regulations, rules, policies, and payment amounts. All content on this website is informational only, general in nature, and does not cover all situations or all payers' rules and policies. This content is not intended to instruct hospitals and/or physicians on how to use or bill for healthcare procedures, including new technologies outside of Medicare national guidelines. A determination of medical necessity is a prerequisite that Carolina Chemistries assumes will have been made prior to assigning codes or requesting payments. Hospitals and physicians should consult with appropriate payers, including Medicare fiscal intermediaries and carriers, for specific information on proper coding, billing, and payment levels for healthcare procedures. (ECF No. 83, pgs. 84, 130)

- Revenue projections are estimated and benchmarked using Medicare payout. Profit picture may change depending on your insurance mix. Profit is subject to change depending on local providers. Check with your providers for payouts in your area. Reimbursement is dependent upon ordering with proper ICD-9 Diagnosis Codes.  (ECF No. 83, pgs. 85, 131)

The 2012 and 2013 brochures also included a coding alert regarding semi-quantitative drug testing and further Medicare guidance on billing and coding for drug testing.  Doc. No. 83, pp. 121-124, 133. The Medicare guidance included the following:

> If you have any questions, please contact your carrier, FI, or A/B MAC at their toll free number, which may be found at http://www.cms.gov/MLNProducts/downloads/callcenter/tollnumber directory.zip on the CMS website. *Id.* at 124.

Relators have identified two expert witnesses to testify in support of their allegations against Carolina Liquid.  Jacqueline Bloink claims to be a compliance and medical coding expert. ("Jacqueline Bloink Depo.") Ex. 2, p. 9:17-18.  Without reviewing a single claim for payment, Ms. Bloink issued an initial report on March 22, 2022, opining that "……all of the labs billed to Medicare, Medicaid, and other payers (commercial or government) using the Carolina Liquid Chemistries analyzer machines for the quantitative lab tests **were false claims.**" (*Emphasis in the original*). Ex. 3, p. 9.  Ms. Bloink further stated:

> I am waiting for CMS to send claim data (as requested by Cotchett Pitre & McCarthy LLP) in order to analyze the billing codes that were submitted to CMS. Once I receive the CMS claims, I will be able to assign the correct CPT code and Medicare Fee Schedule price for each service rendered depending on the year the claim was billed, resulting in the damages of charges billed to Medicare, Medicaid and private insurance – that were false claims. *Id.*

Ms. Bloink did not receive any of the claim data referenced above.  (Ex. 2, p. 11:15-18), Nevertheless, on June 18, 2022, Ms. Bloink issued a second report opining that government and private payors paid $5,472,851.55 to "healthcare providers that purchased the Carolina Liquid Chemistry machine under false pretenses" between 2012 and 2017. Ex. 4, p. 11.

In the course of her analysis, Ms. Bloink testified that she did not review a single CMS 1500

claim form submitted by a provider (Ex. 2, p. 23:21; p. 54: 21-23); she did not interview or receive any information from a provider (*Id.* p. 24); she did not have any factual knowledge that any particular provider submitted a claim for a drug of abuse test performed on a Carolina Liquid analyzer. (*Id.* p. 55:1-4). She did not know any of the equipment used for any reimbursement paid to any provider, or whether that equipment was purchased from Carolina Liquid. *Id.* p. 55:1-8. Ms. Bloink further testified that she had no information of what, if any, marketing or other materials any provider relied upon in purchasing a chemistry analyzer. (*Id.* p. 55:9-16).

Rather, Ms. Bloink relied solely upon three documents described as, "Two documents associated with Explanation of Benefits of labs billed and paid…" and, "A spreadsheet of claims submitted between 2012-2017…." Ex. 3, p. 8. According to Ms. Bloink's report, the spreadsheet reimbursements alone totaled $5,732,982.13.[1] *Id.* at 9-10. <u>All of these payments, however, were based upon qualitative codes</u>, as described in detail herein. Ex. 9, pp. 3-5.

Ms. Bloink reviewed EOB reimbursements totaling $9,872.55, based upon 56 payments. Ex. 4, p. 9. Of the 56 alleged payments, only two were paid by a federal payor. Ex. 2, p. 49:20-23. In those two instances, Ms. Bloink testified that she had no information as to the provider reimbursment (*Id.* at 50:7-11; 55:1-17; 62:4-11); no knowledge of the type of instrument that performed the tests (*Id.* at 61-62:23-3; 54:12-15); no information that the reimbursement resulted from a test performed on equipment sold by Carolina Liquid ((*Id.* at 55:5-7; 57:21-23); and no information that the code listed in either EOB was in any way caused by Carolina Liquid (*Id.* at 55: 9-17; 62:12-17).

Relators also identified Dr. Michael Coyer as an expert in the field of forensic toxicology. Ex. 5, p. 11. In his report, Dr. Coyer opined as follows:

> Although immunoassay drug class testing is generally only considered a qualitative test, <u>some other types of clinical immunoassay testing can produce both qualitative and quantitative results</u>. *(Emphasis added).* These immunoassay tests are designed to be highly selective for a *specific substance* (i.e., ethyl alcohol, glucose) and not a *class of a substance* (i.e. opiate class, or any specific drugs of abuse falling into a class). Urine or serum ethyl alcohol can be measured both qualitatively and quantitatively using immunoassay testing, The same holds true for serum glucose

---

[1] Ms. Bloink's alleged spreadsheet damages of $5,732,982.13 exceeds her total alleged damage figure of $5,472,851.55 by $260,130.58. One of numerous mathematical errors in her report.

testing. In these two examples, the immunoassay kits are specifically designed for each individual substance and are therefore able to determine individual substances. These kits would be considered '*highly selective*'. This is not the case with immunoassay drug testing kits which are much '*less selective*' and therefore only qualitative, including other drugs of abuse. *Id.* at 5.

Consistent with the above, Dr. Coyer acknowledged that a general chemistry analyzer <u>is capable of producing a quantitative result</u> for certain types of immunoassay kits.

> Q. So, the chemistry analyzer itself, you have never seen a CLC one, but just a general chemistry analyzer itself, is capable of producing a quantitative result?
>
> A. For certain types of immunoassays kits, yes; but not for all of them.

("Michael Coyer Depo.") Ex 6, p. 39;17-22.

Dr. Coyer concludes that, "In my opinion, the chemistry analyzers in combination with the immunoassay reagents used in those tests cannot provide <u>reportable quantitative results</u>." Dr. Coyer added in a footnote that ethyl alcohol was an exception to his general conclusion in that it did provide a quantitative result. *Id.*

Dr. Coyer further stated in his report that the procedures he discusses for chemistry analyzer testing "are well known and understood in the laboratory drug testing industry." Ex. 5, p. 2. When asked about this statement in deposition, Dr. Coyer reiterated the well-known and understood nature of the testing and billing process for drugs of abuse.

> Q. Okay. I think on Page 2 of your report, you don't have to turn there, but you -- you state that these are well-known and understood procedures in the lab drug testing industry, what you're talking about.
>
> A. Absolutely. Yes.
>
> Q. All right. And you would expect, isn't it correct, any qualified lab director to know these procedures?
>
> A. I -- a lab director runs the lab. A billing director runs the billing, but in my -- my colleges that run labs, shame on them if they don't know something about the billing and they do understand that language. So, they should have general knowledge. This is the basic premise of drug testing, immunoassay screening. It's ---
>
> Q. That's what I'm talking about.
>
> A. It's 101. I mean, it's laboratory 101. It's-- it's actually billing 101.
>
> Q. So, you would expect any qualified lab director to know these procedures, would you not?

A. The laboratory procedures, they should understand the technology, yes.

Q. And you would expect that that knowledge of the technology to be a material or an important requirement for a lab director in running a rest?

A. In getting a test, yes. As far as billing, I think that that lab director should have someone with them that will explain the billing, because that's part of running the lab. But the lab director needs to understand the technology they are doing using -- and the -- and the limitations of that technology, regardless of what someone else tells them.

Ex. 6, pp 67:18 to 68:24.

Carolina Liquid offered Janice Jacobs as a billing and coding expert through her reports, deposition, and affidavit. Ms. Jacobs agreed with Relators' coding expert that all of the reimbursements contained in the spreadsheet data (Ex. 4, pp. 9-10) represent payments for <u>qualitative</u> codes. Ex. 9, p. 2). Ms. Jacob further agreed with the Relators' coding expert that the EOB data reviewed does not specify the provider who performed the test, the type of equipment used, or any other data connecting the payment to a Carolina Liquid instrument. *Id.* p. 1.

**IV.   ARGUMENT**

The Court may grant summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v, Liberty Lobby, Inc.* 477 U.S. 242, 248-49 (1986). All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Olsen v. Idaho State Bd. Of Med.,* 363 F.3d 916, 922 (9th Cir. 2004). Unsupported conjecture or conclusory statements do not create a genuine dispute of material fact and will not defeat summary judgment. *Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir. 2008). The Court may grant summary judgment as to a part of a claim or defense provided no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law as to that part of the claim or defense. Fed. R. Civ. P. 56(a).

**A.     Relators have failed to produce evidence of a false claim.**

"It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 997 (9th Cir. 2002). Relators have failed to produce a single false claim submitted to the government for payment. Accordingly, summary judgment in favor of Defendant is appropriate.

Under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B), liability arises where a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." To overcome a summary judgment motion, Relators must present material questions of fact as to each of the following elements: (1) a false statement or fraudulent course of conduct; (2) that is material (3) made with knowledge of the falsity, that causes (4) the government to pay out money. *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

The parties agree in the pleadings that to bill Medicare, healthcare providers must submit a CMS-1500 claim form (the "form") certifying that the treatment was "medically indicated and necessary for the health of the patient," among other requirements. ECF No. 83, ¶ 28; ECF No. 123, ¶ 28. Relator's evidence includes no such forms. Without reviewing a single CMS claim, Relators' coding expert, Ms. Bloink, concluded in her first report that "……all of the labs billed to Medicare, Medicaid and other payers (commercial or government) using the Carolina Liquid Chemistries analyzer machines for the quantitative lab tests **were false claims.**" (*Emphasis in the original*). Ex. 3, p. 9.

In her second report, Ms. Bloink relied exclusively on three documents to establish the existence of a false claim, described as, "Two documents associated with Explanation of Benefits of labs billed and paid…" and, "A spreadsheet of claims submitted between 2012-2017…." Ex. 4, p. 8. In her analysis of the reimbursements, Ms. Bloink does not raise as a genuine issue of material fact a single false claim caused by Carolina Liquid.

She cannot identify what equipment was allegedly used for each lab test service included in her damages calculation, what laboratory certifications any specific healthcare provider had or

didn't have, what Carolina Liquid marketing document any healthcare provider allegedly relied upon in submitting the code, what specific CPT/HCPCS codes are included in her damages calculation, or what specific billing and coding guidance she is relying on in forming her opinion. Ex. 9, p. 1. In several cases, the healthcare provider is unknown. *Id.* Relators offer no other evidence to fill these fundamental gaps.

<u>The entire 2012 – 2017 spreadsheet reviewed by Ms. Bloink represented payments made for qualitative or presumptive billing codes.</u> Ex. 9, pp. 3-5. Specifically, Ms. Bloink identified the CPT codes on the spreadsheet, by the year reimbursement was paid, as follows: 80307 (2017); G0431 (2012-2015); G0479 (2016, 2017); 80101 (2012-2015). *Id.* The AMA/CMS descriptions define all of these codes for qualitative or presumptive testing. *Id.* Presumptive testing as applied to urine drug testing is considered a qualitative test. *Id.* at 5. As such, none of these claims would be false even if somehow "caused" by Carolina Liquid. The relevant AMA/CMS descriptions by year are:

| YEAR | CHARGE_CODE | AMA/CMS DESCRIPTION |
|---|---|---|
| 2017 | 80307 | Drug test(s), presumptive, any number of drug classes, any number of devices or procedures, by instrument chemistry analyzers (eg, utilizing immunoassay [EIA, ELISA, EMIT, FPIA, IA, KIMS, RIA]), chromatography (eg, GC, HPLC), and mass spectrometry either with or without chromatography, (DAT, DESI, GC-MS, GC-MS/MS, LC-MS, LC-MS/MS, LDTD, MALDI, TOF) includes sample validation when performed, per date of service |
| 2015 | G0431 | Drug screen, qualitative; multiple drug classes by high complexity test method (e.g., immunoassay, enzyme assay), per patient encounter |
| 2016 | G0479 | Drug test(s), presumptive, any number of drug classes; any number of devices or procedures by instrumented chemistry analyzers utilizing immunoassay, enzyme assay, tof, maldi, ldtd, desi, dart, ghpc, gc mass spectrometry), includes sample validation when performed, per date of service |
| 2017 | G0479 | Drug test(s), presumptive, any number of drug classes; any number of devices or procedures by instrumented chemistry analyzers utilizing immunoassay, enzyme assay, tof, maldi, ldtd, desi, dart, ghpc, gc mass spectrometry), includes sample validation when performed, per date of service |

| YEAR | CPT | AMA/CMS DESCRIPTION |
|---|---|---|
| 2012 | 80101 | Drug screen, qualitative; single drug class method (e.g., immunoassay, enzyme assay), each drug class |
| 2013 | 80101 | Drug screen, qualitative; single drug class method (e.g., immunoassay, enzyme assay), each drug class |
| 2014 | 80101 | Drug screen, qualitative; single drug class method (e.g., immunoassay, enzyme assay), each drug class |
| 2015 | 80101 | Drug screen, qualitative; single drug class method (e.g., immunoassay, enzyme assay), each drug class |

| YEAR | CODE | AMA/CMS DESCRIPTION |
|---|---|---|
| 2015 | 80301 | Drug screen, any number of drug classes from Drug Class List A; single drug class method, by instrumented test systems (eg, discrete multichannel chemistry analyzers utilizing immunoassay or enzyme assay), per date of service |
| 2012 | G0431 | Drug screen, qualitative; multiple drug classes by high complexity test method (e.g., immunoassay, enzyme assay), per patient encounter |
| 2013 | G0431 | Drug screen, qualitative; multiple drug classes by high complexity test method (e.g., immunoassay, enzyme assay), per patient encounter |
| 2014 | G0431 | Drug screen, qualitative; multiple drug classes by high complexity test method (e.g., immunoassay, enzyme assay), per patient encounter |
| 2015 | G0431 | Drug screen, qualitative; multiple drug classes by high complexity test method (e.g., immunoassay, enzyme assay), per patient encounter |
| YEAR | CODE | AMA/CMS DESCRIPTION |
| 2017 | 80307 | Drug test(s), presumptive, any number of drug classes, any number of devices or procedures, by instrument chemistry analyzers (eg, utilizing immunoassay [EIA, ELISA, EMIT, FPIA, IA, KIMS, RIA]), chromatography (eg, GC, HPLC), and mass spectrometry either with or without chromatography, (DAT, DESI, GC-MS, GC-MS/MS, LC-MS, LC-MS/MS, LDTD, MALDI, TOF) includes sample validation when performed, per date of service |

*Id.* at 3-5.

Ms. Bloink further reviewed and included EOBs in her damages calculations. Ms. Bloink identified only two EOB reimbursements from a government payor for a quantitative code. Ex. 2, p. 49:20-23. In those two instances, Ms. Bloink testified that she did not know the provider reimbursed (*Id.* at 50:7-11; 62:4-11); had no knowledge of the type of instrument that performed the tests (*Id.* at 61-62:23-3; 54:12-15); had no information that the reimbursement resulted from a test performed on equipment sold by Carolina Liquid ((*Id.* at 57:21-23); and had no information that the test or code listed in either EOB was in anyway caused by Carolina Liquid (*Id.* at 62:12-17).

Consequently, Relators have failed to raise a genuine issue of material fact that a provider filed a false claim caused by Carolina Liquid. Summary judgment is appropriate.

**B.  Relators have failed to produce evidence of fraudulent conduct causing submission of a false claim.**

Besides a claim, the FCA further requires that the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729. In the TAC, Relators include Carolina Liquid brochures for the years 2012 and 2013, ECF. No. 83, pp. 49-155). However, Relators have failed to produce evidence that any provider received or relied upon either of these brochures in determining billing codes.

Moreover, to withstand the motion to dismiss the TAC, Relators supplemented their previous allegations with alleged specific acts or events supposedly involving Carolina Liquid's conduct. For example, Relators reference in the TAC that Jerry Miller sent an email in 2010 stating that the machines at issue could run drugs of abuse test either quantitatively or qualitatively. ECF. No 83, ¶ 96. Relators have produced no such email or witness. Relators allege in the TAC that a meeting took place in Beckley, West Virginia, as evidence of a fraudulent marketing scheme. ECF No. 83, ¶ 132. No evidence of such a meeting has been produced.

Relators allege in the TAC that Dr. Root identified quantitative codes in 2010 "even though the analyzers did not perform quantitative tests, only qualitative ones." ECF No. 83, ¶ 105. Relators have produced no evidence of any false representation by Dr. Root in connection with Carolina Liquid analyzers. Relators allege in the TAC that Carolina Liquid was repackaging inserts for the reagents used in the UDT analyzers with instructions to bill for quantitative tests. ECF No. 83, ¶ 117. No evidence exists that Carolina Liquid ever repackaged a reagent insert that did not accurately state the intended use of the product.

Relators allege in the TAC that 20 customers allegedly purchased a Carolina Liquid analyzer and submitted false claims as a result of Carolina Liquid's marketing practices. ECF No. 83, ¶¶ 140-141. None of these customers has provided evidence to support this allegation. In the TAC, Relators allege that, "Regional sales manager, Mr. Miller instructed his sales staff to promote quantitative testing on desktop analyzers and to tell customers they could bill quantitative tests codes to Medicare." ECF. No. 83, ¶ 96. However, in his deposition, Mr. Miller denied any such allegation:

> Q. Mr. Miller, Mr. Reagan has further alleged that the Shugarts worked with you and others to promote illegal sales practices. Is that a true statement?
>
> A. That is absolutely definitively incorrect. . . .
>
> Q. So, Mr. Miller, you absolutely deny, is it correct, that you were engaged in any type of illegal sales practice on behalf of CLC or anybody else?
>
> A. I would never work with or work for or work with or affiliate myself with anyone or any group or any company including CLC that would promote any illegal activity ever.

> Q. Did Phil Shugart or Patti Shugart or anyone on behalf of Carolina Liquid Chemistries ever instruct you or request that you provide any false information to any potential customer on their behalf?
>
> A. Never. . . .
>
> Q. Go ahead, please respond to the question.
>
> A. They never, ever suggested that I promote any illegal activity.
>
> Q. Mr. Reagan and his lawyers have alleged that you, Jerry Miller, on behalf of CLC, made false statements to doctors and physicians, encouraged them or convinced them to improperly bill either the government or a private insurance carrier. Did you ever do that?
>
> A. Did you use the term illegally promote to doctors and clinics?
>
> Q. They encouraged you to make false statements to encourage doctors or clinics to illegally falsely bill either a public or a private insurance payer. Did you ever do that?
>
> A. Never under any circumstances was I suggested or promoted to provide any false or misleading information ever…..
>
> Q. Mr. Miller, your deposition may be shown to a jury, and they may get to see your testimony in this matter. Having one accuse you of fraud of that nature, how does that make you feel?...
>
> A. Highly offended. I consider myself very honest in every respect, and I'm highly offended by it.
>
> ("Jerry Miller Depo.") Ex. 10, pp. 113:21 to 117:5.

Relators have produced no evidence to contradict Mr. Miller's testimony.

In sum, Relators have provided no evidence that any provider relied upon <u>any</u> oral or written statement by a Carolina Chemistry representative in submitting a claim for payment to the government. The testimony of Relators' forensic toxicologist expert described the tests and billing codes at issue here as basic. "It's 101. I mean, it's laboratory 101. It's-- it's actually billing 101." Ex. 6, pp 68:9-10. It is implausible that any qualified physician or lab director, treating a patient, would base a procedure or a billing code on a company brochure. Regardless, Relators have failed to produce a physician or provider who claims she did.

Relators have failed to produce a genuine issue of material fact as to the who, what, when, where, and how allegations of the alleged fraud. *United Healthcare Ins. Co.,* 848 F.3d at 1181.

**C.     Relators have failed to produce evidence of scienter.**

The FCA defines the scienter requirement as "actual knowledge," deliberate ignorance," or reckless disregard," without a showing of "specific intent to defraud."  31 U.S.C. § 3729(b)(1). Relators have not provided evidence from which a reasonable jury could find that Carolina Liquid acted with the required scienter.

Relators allege in the TAC numerous allegations taken from the original FBI search warrant affidavit filed in 2014.  See Summary at ECF No. 88-1.  For example, as evidence of corporate scienter, Relators allege from the affidavit that an email exchange occurred between the Vice President of Lin-Zhi and Ms. Shugart in August of 2010.  ECF No. 83, ¶¶188-124. ECF No. 88-1, pp. 1-5.  Relators have produced no witness to testify that any portion of this alleged exchange constitutes evidence of any attempted fraud.

Relators allege from the affidavit that a potential employee told Phil Shugart that the company was promoting illegal billing practices,  ECF No. 83, ¶¶ 108-109.  ECF No. 88-1, pp. 1-2.  No such witness has been produced.  Relators allege from the affidavit that in January 2014 a customer emailed Patricia Shugart stating that it would cancel its order from Carolina Liquid unless it was provided documentation from CMS warranting that Carolina Liquid's machines produced true quantitative results.  ECF No. 83, ¶ 131. ECF No. 88-1, pp. 6-7.  Relators have not produced any such customer as a witness.

Relators have failed to provide evidence that Carolina Liquid caused any of the physicians or practices listed in the TAC to submit a single false claim to the government.  ECF No. 83, ¶ 132. Relators have failed to produce an email by Jerry Miller as alleged in the TAC as evidence of a fraudulent marketing scheme.  ECF No. 83, ¶ 96.

In sum, in attempting to establish corporate scienter, Relators have relied upon numerous allegations from the original FBI affidavit or other sources that are not supported by fact witnesses. Relators' claims fail to survive summary judgment with respect to proof of the requisite scienter required by the FCA.

**V.     CONCLUSION**

The experts agree that all alleged reimbursements (none of which are CMS 1500 claim

forms) as contained on the spreadsheet offered by Relators' expert (Ex. 3, pp. 9-10) are payments for qualitative codes.  No dispute exists that the EOB reimbursements lack sufficient identifying data to raise a genuine issue of material fact regarding any action undertaken by Carolina Liquid.  Ex. 2, pp. 50:7-11; 54:12-15; 57:21-23; 61-62:23-17.   Unsupported conjecture or conclusory statements do not create a genuine dispute of material fact and will not defeat summary judgment.  *Surrell v. Cal. Water Serv. Co.,* 518 F.3rd 1097, 1103 (9thCir. 2008).

Carolina Liquid requests that the Court grant summary judgment in its favor on all claims of the TAC.

Dated:  July 11, 2022

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Randall S. Luskey*
Randall S. Luskey

RANDALL S. LUSKEY (SBN: 240915)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street. 24th Floor
San Francisco, CA 94105
Telephone:  (628) 432-5100
Facsimile:   (628) 232-3101

WALTER C. HOLTON, JR. (*Pro Hac Vice*)
CHERYL D. ANDREWS (*Pro Hac Vice*)
HOLTON LAW FIRM, PLLC
857 W. Fifth Street
Winston-Salem, NC  27101
Telephone:  (336) 777-3480
Facsimile:   (336) 722-3478

*Attorneys for Defendant Carolina Liquid Chemistries Corp.*